Filed 3/21/14  In re M.R. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | B249625<br><br>(Los Angeles County<br>Super. Ct. No. CK54217) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>M.R.,<br><br>　　　　Defendant and Appellant. | |

　　　　APPEAL from an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Juvenile Court Referee.  Affirmed.

　　　　Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

On April 30, 2013 the juvenile court sustained a petition filed by the Los Angeles County Department of Children and Family Services (Department) on behalf of 10-year-old M.R., eight-year-old A.P. and six-year-old Z.P. pursuant to Welfare and Institutions Code section 300, subdivision (b) (failure to protect),[1] and on behalf of three-year-old P.P. and two-year-old J.P. pursuant to section 300, subdivisions (b) and (j) (abuse of sibling), finding that the children's mother M.R. (Mother) and father David P. (Father) failed to properly supervise the children and had placed the three older ones (M.R., A.P. and Z.P.) in a detrimental and endangering situation by causing them to walk approximately two-tenths of a mile down Ventura Boulevard and to cross a busy intersection twice without adult supervision to sell chocolates in a supermarket parking lot. Mother appeals the court's jurisdiction findings and its order at disposition removing all five children from her custody and care, contending there was insufficient evidence to support the findings and order.[2] We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Unsupervised Excursion to the Ralphs Parking Lot To Sell Chocolates*

On February 11, 2013 Mother, Father and their five children checked into a motel on Ventura Boulevard in Woodland Hills. A subsequent background check revealed that Mother and Father had outstanding felony arrest warrants for welfare fraud and other property-related crimes. Mother and Father admitted they were fugitives and had been moving from place to place with the children to avoid apprehension.

On Saturday, February 23, 2013 the Los Angeles Police Department received several reports that M.R., A.P. and Z.P. were approaching people asking for money in the

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] Father has not filed an appeal. Accordingly, regardless of our resolution of Mother's challenge to the evidentiary support for the court's April 30, 2013 findings and order, the children will remain dependents of the juvenile court. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492 ["it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child"].)

2

parking lot of the Ralphs supermarket near the southeast corner of Ventura Boulevard and Winnetka Avenue. The children had no adult supervision; the police report indicated the parking lot was full and traffic in the lot was heavy. The time line from the calls established the children had been in the parking lot for at least 45 minutes. The parking lot is approximately two-tenths of a mile east of the motel along Ventura Boulevard. To reach the parking lot at Ralphs, the children had to cross Ventura Boulevard and Winnetka Avenue, both busy streets.

M.R. told the responding officer he had walked to the parking lot by himself to sell chocolates for school. M.R. had a blank form marked "Helen Grace Chocolates" but no writing instrument to take orders and no chocolates. The officer drove M.R. back to the motel where Mother and Father were with the two youngest children. Both A.P. and Z.P. returned to the motel by themselves. A.P. and Z.P. apparently had walked together to the parking lot shortly before M.R. joined them. A.P. and Z.P. told the social worker who interviewed them after they had been detained they were selling chocolates or obtaining the names and telephone numbers of customers to sell chocolates to at a later time, not simply asking for money. They did not have any chocolates or customer lists with them..

All three children reported Mother and Father knew they had gone to the parking lot to sell chocolate. Mother, however, said Father had allowed them to go to the store without her knowledge and explained she thought they were too young to be by themselves. Mother later acknowledged she should have more closely monitored the children. For his part, Father explained to the officer who brought M.R. back to the motel he had told the three older children not to go anywhere until he could get the younger children ready and had just learned Mother allowed them to go to the store to sell chocolates for school. Although he expressed some concern about Mother's level of supervision, Father insisted the children were not in danger.

All the children appeared well dressed without any signs of physical abuse. However, after A.P., Z.P. and J.P. were examined at USC Medical Center, it was reported

3

the three girls had poor hygiene. Subsequent reports indicated M.R. had some behavioral problems and A.P. mental health issues. Both had received professional treatment.

2. *The Detention of the Children; the Arrest of Mother and Father*

Once all five children were back at the motel room, Mother and Father were arrested for child endangerment; they remained incarcerated through the jurisdiction and disposition hearing (and beyond). The children were immediately taken into protective custody by the Department.

On February 27, 2013 the Department filed a dependency petition alleging in a single count pursuant to section 300, subdivision (b), that Mother and Father had endangered M.R., A.P. and Z.P. by causing them to walk without adult supervision to the supermarket parking lot (incorrectly described as more than 10 blocks away and across eight major intersections) to sell chocolates and thereby placed them and their two younger siblings at substantial risk of serious physical harm. The petition further alleged in a second count pursuant to section 300, subdivision (j), that the parents' failure to properly supervise the older children placed P.P. and J.P. at risk of serious physical harm.

The juvenile court found a prima facie case had been presented the children were persons described in section 300 and vested temporary placement and custody with the Department. The Department was ordered to evaluate appropriate relatives for possible placement.

In its jurisdiction and disposition report the Department explained that M.R., A.P. and Z.P. had been made dependents of the juvenile court in December 2008 and P.P. in March 2009 based on sustained allegations that Mother had physically abused M.R., Mother and Father had exercised poor supervision of the children, Father had a history of substance abuse that periodically rendered him incapable of providing care and supervision of the children, and Mother similarly had a history of abuse of prescription medication that periodically rendered her incapable of providing regular care and

4

supervision of the children.[3] On March 11, 2010 the juvenile court terminated its jurisdiction over the four children with a family law order granting Mother sole physical and legal custody. The reported also listed Mother and Father's known criminal history, which included as to Mother welfare fraud, grand theft and prostitution, and, as to Father, welfare fraud, grand theft and domestic violence. In interviews M.R. and A.P. said Father used marijuana, which he kept in the bathroom of the motel room.

Prior to the April 30, 2013 contested jurisdiction hearing, A.P. and Z.P. were moved from a foster family to the home of their cousin Donna. M.R. was scheduled to move to Donna's on April 30, 2013; the two younger children would be moved there once the home was approved for that many children.[4] The children had previously been in Donna's care when their paternal grandmother (Donna's aunt) called and asked for her assistance.

On the day of the hearing the Department filed a first amended petition, which repeated the subdivisions (b) and (j) counts from the original filing and added allegations that the children were former dependents of the juvenile court and that the Department and court's involvement had failed to change the parents' behavior. At the outset of the hearing Mother and Father objected to the amended petition as untimely. The court struck the new counts but took judicial notice of the findings and orders from the prior dependency proceedings as requested by the Department. The court then received into evidence the Department's detention report, the jurisdiction/disposition report, the police report of the parking lot incident and several other documents.

M.R. was called as a witness by Mother. He testified he had previously walked by himself to the nearby Ralphs to buy groceries for the family. He had never gone there

---

[3] In addition to the sustained dependency petition, the Department reported there had been a number of prior referrals regarding the family over the years. Many of the reports of neglect or abuse had been determined to be "unfounded" or "inconclusive," but several, between 2003 and 2005 when M.R. and A.P. were infants or toddlers, were substantiated.

[4] Donna had two children of her own.

with either Mother or Father. M.R. explained his parents had taught him not to cross the street on a red or yellow light and to look both left and right for cars before walking across a street. M.R. also testified, while staying at the motel, Mother and Father had told him to ask people for money, which he had done. On February 23, 2013, A.P. and Z.P. had walked to Ralphs to sell chocolates before M.R. left the motel. Mother asked him to follow his sisters to the store. Father was present when Mother made that request.

Mother also presented the testimony of an investigator who had taken photographs of the motel, the Ralphs parking lot and the surrounding area. The photographs were admitted into evidence. The investigator testified to reach the parking lot from the motel the children had to cross both Ventura Boulevard and Winnetka Avenue.

Father called a motel employee (possibly the manager), who testified there had been complaints about the children taking food from the breakfast buffet in the lobby, hanging out in the lobby, playing in the motel parking area and running around without supervision. He said Mother and Father were not present when these issues arose and he had asked them on several occasions not to allow the children to loiter in the lobby.

The court sustained the petition with interlineated amendments—the allegation the children had walked more than 10 blocks down Ventura Boulevard was replaced with "about 2/10 of a mile," and "crossing busy intersections twice" was substituted for "crossing eight major intersections"—and found the children were persons described by section 300, subdivisions (b) and (j).

Commenting on the evidence, the court stated, "These are very young children, especially the girls ages six and eight. It appears [M.R] may have gone to Ralphs a couple of times to do some marketing for his family. Maybe he has a little more experience. One of the girls is developmentally disabled.[5] She has special needs. This is an inappropriate amount of responsibility to give to little children. The police report is

---

[5]    The nature of A.P.'s developmental issues is not fully explained in the record. However, the juvenile court referred all five children to the Regional Center for evaluation.

clear. These children had to cross two very busy streets. The parking lot at Ralphs was a dangerous place for them to be, and although [M.R.] knows what the different colored stoplights mean, it's reasonable to know that young children don't always look all ways. That drivers are not always driving safely, particularly in a parking lot. . . . They were also at risk of being kidnapped. . . . These children were unsupervised. They were unprotected. Their parents knew it, and the children were at risk." In addition, the court stated, the children had been allowed to play unsupervised in the motel's lobby and parking lot despite requests to the parents to stop that behavior. Finally, the court stressed that neither Mother nor Father had presented any evidence they now understood the danger created by their lack of supervision.

Proceeding immediately to disposition, Father's counsel objected to some of the Department's recommendations for reunification services, specifically to individual counseling and to required participation in a substance abuse program and testing. Mother's counsel joined in those objections. Neither parent argued removal of the children was not warranted or suggested the children could be adequately protected through provision of in-home services. The court found there were no reasonable means to protect the children without removal from their parents' physical custody and ordered them suitably placed. Reunification services were ordered for both Mother and Father including a 52-week parenting program and on-demand drug testing if there was a reasonable suspicion either parent was under the influence. Participation in a full drug rehabilitation program was required only if they tested positive or failed to test.

**DISCUSSION**

1. *The Governing Statute and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.) Section 300, subdivision (b), allows a

7

child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." Section 300, subdivision (j), authorizes dependency jurisdiction when a child's sibling has been abused or neglected as defined in subdivisions (a), (b), (d), (e), or (i), and there is a substantial risk the child will be abused or neglected.

Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child presently needs the court's protection. (*Ibid.*) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.)[6] Under this standard "[w]e review the record to determine whether there is any

---

[6] The burden of proof at the jurisdiction phase in the juvenile court is preponderance of the evidence; the burden of proof at disposition is clear and convincing evidence. (§ 355, subd. (a) [jurisdiction findings by preponderance of evidence]; § 361, subd. (c) [disposition findings by clear and convincing evidence].) Nonetheless, we review both jurisdiction findings and the disposition order for substantial evidence. (See *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881 ["The 'clear and convincing' standard . . . is for the edification and guidance of the trial court and not a standard for appellant review. [Citations.] '"The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal."'"]; see also *Crail v. Blakely* (1973) 8 Cal.3d 744, 750; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1525-1526.)

substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 763; *In re Savannah M., supra,* 131 Cal.App.4th at p. 1393.)

   2. *Substantial Evidence Supports the Jurisdiction Findings Under Section 300, Subdivisions (b) and (f)*

The trial court reasonably concluded Mother and Father failed to adequately supervise M.R., A.P. and Z.P. and, as a result of their negligence, exposed them to a substantial risk of serious physical harm by permitting (or, apparently, directing) them to walk by themselves down Ventura Boulevard, cross two busy streets, and solicit money from strangers in a busy supermarket parking lot. This was not, as Mother suggests, comparable to a 10-year-old walking to school or a friend's home unaccompanied by an adult. Ventura Boulevard is a large commercial thoroughfare with heavy traffic, not a quiet residential street. Approaching strangers and asking for money in a parking lot (whether begging or selling candy) is not asking a friend's mother for a cookie. M.R., A.P. and Z.P., who had been living at the current motel for less than two weeks, were not walking down familiar streets; indeed, there was no evidence A.P. and Z.P.—only eight- and six-years old—had ever walked anywhere by themselves, let alone to the Ralphs at the corner of Winnetka Avenue.

Moreover, the juvenile court properly declined to view the February 23, 2013 events as an isolated incident that did not manifest a present or continuing risk of serious physical harm. All but the youngest of the five children had previously been dependents of the court based, in substantial part, on sustained allegations that Mother and Father had exercised poor supervision of the children. The motel employee's testimony established that lack of parental supervision was an ongoing problem and that repeated requests to rectify the problem went unheeded. Finally, neither Mother nor Father demonstrated any real appreciation of the problem, insisting they were trying to develop their children's independence or self-reliance. This lack of insight fully justified the court's conclusion

9

all five children were at substantial risk of serious harm. (See *In re Esmeralda B*. (1992) 11 Cal.App.4th 1036, 1044 [parent's denial of problem may be probative to determination whether he or she is likely to modify the behavior in the future absent court supervision]; see generally *In re Eric B.* (1987) 189 Cal.App.3d 996, 1003 ["The state, having substantial interests in preventing the consequences caused by a perceived danger is not helpless to act until that danger has matured into certainty. Reasonable apprehension stands as an accepted basis" for the exercise of state intervention.]; *In re N.M., supra,* 197 Cal.App.4th at p. 165 [same].)

3. *Substantial Evidence Supports the Disposition Order*

Section 361, subdivision (c)(1), permits removal of a child from his or her parent's custody only if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child if the child were returned home and "there are no reasonable means by which the [child]'s physical health can be protected without removing" the child from his or her parent's custody. "The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus on the statute is averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

Although she did not voice any objection to removal at the disposition hearing, Mother argues there was insufficient evidence the children would be in danger if returned to her and Father.[7] In her appellate briefs, however, Mother simply reiterates that none of

___

[7] We reject the Department's contention Mother forfeited her argument on appeal that removal was improper because she failed to object in the juvenile court. As the Department explains, a reviewing court ordinarily will not consider a challenge to a procedural defect or erroneous ruling if an objection could have been but was not made in the trial court. "Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; see *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 ["[t]he purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected"].) Nonetheless, it is the Department's

the children was actually injured during the excursion to Ralphs to solicit money on February 23, 2013, states that she has acknowledged she did not properly supervise the children on that date, and observes that placement with Donna was comparable to arrangements the family itself had made in the past when Mother and Father needed assistance caring for the children.

Missing from Mother's truncated analysis is any recognition of the serious nature of the dangers to which she had exposed the children, as found by the juvenile court, or the ongoing nature of the parents' negligent failure to supervise the children, again as found by the juvenile court. In addition, although Mother and Father were both incarcerated at the time of the disposition hearing and would remain so for some time to come,[8] they suggested no alternative arrangements that could adequately protect the children without removing them from the parents' custody—whether a plan they had developed for the children to stay with their cousin Donna, as the Department and the court ultimately ordered, or any other proposal. (Cf. § 300, subd. (g) [dependency jurisdiction properly exercised if the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child]; *In re Summer H.* (2006) 139 Cal.App.4th 1315, 1334 [when a section 300 petition is filed because a parent's

---

burden to prove removal from the physical custody of a parent is necessary to protect the child. Absent a statement by the parent clearly evidencing acquiescence in the recommendation for removal, the failure to expressly object does not relieve the juvenile court of its obligation to make appropriate evidentiary findings and apply relevant law to determine whether the case has been proved. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589; *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237.) Nor does the parent forfeit for appellate purposes his or her right to challenge the propriety of the court's orders. (*In re M.B.* (2010) 182 Cal.App.4th 1496, 1506 ["while a parent may waive an objection to specific evidence, a claim that there is insufficient evidence to support the judgment is not waived by a failure to object"]; *In re Richard K.,* at p. 589; see generally *People v. Butler* (2003) 31 Cal.4th 1119, 1126 ["'Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported by substantial evidence, however, is an obvious exception.'"].)

[8] Minute orders for hearings on October 29, 2013, December 10, 2013 and January 14, 2014 all reflect that Mother and Father were in custody.

impending incarceration precludes the parent from caring for his or her child, juvenile court considers "whether the parent's plan for his or her child during the parent's absence is 'adequate'"].) Finally, the evidence of the children's chaotic living environment—repeated moves by the parents to avoid being apprehended by law enforcement, which, in turn, required the older children to change schools four times in a few months—reinforced the juvenile court's conclusion it was necessary to remove them from Mother and Father's custody to ensure their safety and protection. That decision was amply supported by the record.

## DISPOSITION

The juvenile court's findings and order are affirmed.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.

12